at all. Mr. Cohen, whenever you're ready. Just one moment here, owner, thank you. Mr. Cohen, and before you begin, I have something I'd like you to discuss at some point. I don't want to interrupt your flow, but at some point during your remarks, you say in the brief that the settlement has consummated leaves a huge number of class members quote unquote ineligible. But if I look at the declarations you may think that the reimbursement is inadequate, improper in other ways, but they're eligible. Three of them I think are eligible at a 50% reimbursement rate. Two of them are eligible at a 25% reimbursement rate. Three of them are not because they sold their cars or one had a car totaled, etc. But I'd like to know where you get that. I think you said 80% is that right? Ineligible? So I want to know where you get that figure of 80% of the entire class being quote unquote ineligible. That is that they can't file a claim or could not have filed a claim. At some point during your remarks. Large focus of what I intend on discussing today. Good morning and may it please the court. My name is Alexander Cohen and I along with my co-counsel represent a group of objectors who are the named plaintiffs in the original action of this case filed in the District of New Jersey. We are the appellant in this case. Since the birth of our circuit, this court has made clear time and time again that the proponents of the settlement bear the burden of developing a record demonstrating that the settlement is fair, reasonable and adequate. And the District Court should act with careful scrutiny to not allow a majority no matter how large to impose its decisions upon the minority. In such circumstances, objection by a few dissatisfied class members should trigger close judicial scrutiny of the settlement to ensure that the burden of the settlement is not shifted arbitrarily to a small group of class members. And your honor actually pointed out in our briefing we mentioned that 80% of the class members are ineligible for relief in this case. And I want to explain to you why. And I do have to apologize. It involves a tiny bit of math which I know that us as lawyers don't necessarily love to do. But here we have a total class size that includes all current and former owners and lessees of these certain types of Mercedes vehicles. There are 169,000 total class members reportedly covered by this settlement. Of those, approximately 100,000 are former owners and former lessees. Those people just by definition are ineligible for any future repainting of their car because they cannot repaint a car that they do not possess. But they're not ineligible for having put in a claim or even had to ask for a repair in the past, right? If they've got receipts to show they asked for repair. Absolutely, your honor. That is true. However, the record indicates that only 1,532 class members out of the 169,000 filed a claim to be reimbursed for a past repair. And you can only be reimbursed for a past repair if you have made a past repair and you have retained the documentation that's required in order to file that claim. That doesn't mean ineligibility. I can't tell you how many times I've received notice of being a class member for something and been told that if you file a claim, you're going to get 30 something dollars back in terms of a coupon, a check, a credit or something like that. And I take the notice and throw it in the trash can. That doesn't mean I was ineligible. It means I chose not to participate and didn't really care enough to go any further. So this is my supposition. And I could be completely wrong. But I think you're overselling the 80% ineligible figure. Because you could have a significant number of that 169 who made a repair, kept receipts and chose not to file. Or you could have had a significant number who just didn't care to do anything at all. And who are within the time and mileage parameters of the settlement. I don't see how you can go from, oh, only X number filed. That means that the others were ineligible. I don't think that's accurate. Point well taken, Your Honor. That's absolutely correct. That being said, of our eight objectors that we're bringing forward today, three of those objectors fall into the exact mythical category that the appellee described, which are class members who purchased the vehicle, the defect manifested, they did not pay out of pocket to repaint it, and they no longer own it. So we have before the court today three concrete solid examples of class members who are 100% ineligible to receive any benefits under this settlement. Sure. But, I mean, if we're reviewing deferentially the district court's determination about the fairness of this settlement, there is a chasm of difference between three out of eight and 80% being sort of mathematically, definitionally left out in the cold. Sure, Your Honor. And to Judge Jordan's point, I mean, frankly, if there was a gist of your brief, it was 80% are ineligible, 80% are ineligible, 80% are ineligible. And if it turns out that's not true, then I think the case takes on an entirely different sort of complexion. That may be explained by, I guess, just like the phrasing of how that was conveyed at the district court, as well as in our briefing here. In many cases, as Judge Jordan was pointing out, you may have a large number of class members who are eligible to participate and choose not to. And whatever happens, you really only know after the settlement is consummated and approved. In this case, we know that there's two categories of relief that the settlement provides, the past reimbursement and the future discount. But we already know the numbers for the past reimbursement, which is not necessarily common in class actions. And here, we know that about 0.9% of the class filed a claim for the past reimbursement. The explanations for why that happened could vary. It could be a documentation issue. It could be a fact that they didn't want to make a claim. That doesn't really matter. What ultimately does matter is that there are, in our case, at least three, but we are saying a significant portion of class members who will receive nothing. And when the court had to grapple How did you explain the 80% figure to the district court? Absolutely. A good question. How did you get to 80% ineligibility? That's a big number. And if you're right about that, there's trouble for the settlement agreement. Sure. So our objection was that the past looking relief had this very low claims rate that people who hadn't paid to repaint their car or hadn't preserved this documentation are ineligible to claims. And with respect to... Why ineligible? Ineligible means you don't get in the front door. It means you have no shot. It means you are not able to participate. A low claims rate may be indicative of a lot of other things, but not necessarily ineligibility insofar as the settlement is concerned. I've got a lot of hard questions for your opponent too, but that one is a big one for me. If you're not accurate about that 80% figure, I see your case in a whole different light too. Absolutely, Your Honor. If you go to look at the briefing though on this issue, we broke it down by category of class member rather than this appeal where we're aggregating those numbers together. So if you look at our objection, it said, first example, former lesbians who didn't repaint are not eligible to get anything. Second example, those who drive their car more than average are ineligible to receive anything if they hadn't previously paid. Third category, those whose cars are on the older side of the spectrum are ineligible to receive everything. Fifth example, so we went... Okay, so where do you get to the 80%? So those numbers were derived largely from the pin-on plaintiff and Mercedes numbers that they put forward in support of their settlement from the Bellring Declaration. But logic would entail that when you break down the types of relief into the two categories, when you're looking backwards, we know that it's 1%. We don't know exactly the number who are eligible, but we know at least three... Then how can you say 80% ineligible, Mr. Cohen? You just said you can't figure out who's eligible. Then how can you figure out 80% ineligibility? So they're ineligible to participate in the settlement going forward. Going forward. So for them to participate in the past has closed. But you can only lay the blame at the feet of the settlers if the settlement itself froze these people out, not if they, of their own accord, for whatever reason, chose not to participate. And it seems like you're trying to sort of reverse engineer this number by virtue of what sort of happened in the real world. And I think Judge Jordan's point is, I'm not sure you can do that. So that's an 80% figure. So even if it wasn't an 80% figure, it really doesn't matter because ultimately, the release of claims that everybody here argues do have value in exchange for nothing is still per se unreasonable. As I mentioned with the Holmes case that I discussed at the very beginning. But hang on. So one thing, you don't mean that in a settlement this large, if there's a single plaintiff who is ineligible, truly definitionally ineligible, that the settlement is per se unreasonable, do you? The settlement we would say is per se unreasonable, even with a single class member under that definition, because the class definition by its very nature would be overly broad and overly include a class member who is ineligible for release in violation of their due process rights. That can't be, because that plaintiff can opt out and litigate his or her own claim. Sure, Your Honor. I want to make sure I understand your answer to Judge Newsom's You're saying that a settlement is, as a matter of law, unreasonable if one class member does not obtain relief. That's your argument, as a matter of law. I might want to step back on that a tiny bit. Thank you. The opt-out right in and of itself is not sufficient to render an otherwise unfair settlement fair. That being said, if the settlement was otherwise fair to the entire class as a whole, and by happenstance a single class member was ineligible for relief for one reason or another, that may possibly still be fair. But here, this is a much different type of case. I see my time has expired. Don't worry about your time. You're going to go on for a little longer, and so is your opponent. I am not a class action expert of any kind whatsoever, and my questions today may show that. Let me ask you a question. If one of the underlying concerns, putting aside the 80% figure, was that there wasn't relief for the people who suffered diminution in value and never got a repair done before they sold their car or before their car was totaled, why didn't all those people, or why couldn't all those people opt out, file their own or continue their own class action in New Jersey, and seek relief from Mercedes-Benz? It's a good question. Ultimately, as I mentioned before, the opt-out right does not salvage this, but the class action system was created for claims that potentially otherwise be uneconomical to file as an individual action to be brought forth in an aggregate manner. For an individual to opt out, I can't speak to- Not individual, all the people who had these claims. You already had the other class action going in New Jersey, so why couldn't you, if this settlement went through and the people who opted out were people who never had a repair but suffered diminution of value, why couldn't you create a subclass for those people, in effect a subclass, and continue that with the opt-outs in New Jersey? That's a great question. First of all, the district court in this case entered an injunction pursuant to the All-Rich Act that enjoined the entire Ponzio case from moving forward in any way. But it couldn't do that after the fact for people who opted out. You're absolutely right, Your Honor. The second reason is that there is no mechanism for a subclass opt-out or any sort of thing like that. The only way would be to opt out individually and continue to litigate individually. The class definition in this case is so overly broad because it includes a hundred percent of former and current owners and lettees. This wipes out every single person who had a subject vehicle in this case. There is no... Was there any litigation or discussion in the district court about cutting out that subclass of diminution of loss of value owners from this case? If you look at the pin-on plaintiff's complaint and then their first amended, second, and third amended complaint, all of those cases were brought forth based on the idea that the repainting that was offered by Mercedes to those plaintiffs was an inadequate remedy. It was all brought forward based on this diminution in value or benefit of the bargain type of injury that occurred at the point of sale pursuant to, if you guys are familiar with the case of Pond deal versus GM from 2016, the very common way of pleading and litigating these auto vehicle class cases. That was the pin-on plaintiff's theory of the case all the way up until the point of settlement. That was Pond deal, our theory of the case in New Jersey as well. Just when it came to settlement time, they came up with this alternative structure that doesn't match what their theory of the case is, but there's no discussion or opportunity to opt those people out or carve those people out. We're the objectors. We don't have the ability to change the definition or carve that out. No, I understand that, but that might have been part of the discussion at the objection stage. Sure. Mercedes obviously wants the broadest form of release that they can possibly get. They're a defendant. They want global peace. Candidly, there was discussion from our side to both Mercedes and pin-on plaintiffs to try to improve the settlement. Those were shut down at the first sentence, and they were not interested in renegotiating any terms of the settlement. Let me ask you this, and again, I may be displaying some ignorance here. At that point, when you're having those discussions, in a way, the closer you are on your 80% figure, the more attractive the opt-out looks, because it's not just cats and dogs, plaintiffs here and there. It's like, holy cow, we've got an even bigger class action. We can opt out 80% of the people who are frozen out, ineligible under this settlement, and do another one. The closer you are on the 80%, the more attractive the opt-out option looks. Respectfully, Your Honor, I disagree just with the secondary premise of that, which is that if even you had 1,000 or 10,000 people opt out, there is no availability of filing or pursuing a second class action complaint. The opt-outs must be done on an individual basis. The only way to preserve a future class case would be if this court remands and says that the class definition was overly abroad, because it included all former and current owners and lessees, some of which are ineligible to receive relief, or maybe don't have standing, or one of these other reasons that have been discussed. Then, because with a renegotiated settlement with a new class definition, could preserve the rights of some of the people in the District of New Jersey, or some of the potential opt-outs in a different class, but there is no- Your objections go by the wayside if the class had been narrowed to those people who had made a repair or wanted to make a repair in the future? Any of our objections would, but not 100%. What would still remain? What would still remain were our objections regarding the rationality for somebody with a very old or high mileage car to pay 75% of the cost of repainting to an authorized Mercedes dealership, which would render it economically irrational for those members to participate in the settlement. We had an expert that came in and testified and said that- But in a settlement, everybody compromises a little bit. In a 75% fair, I thought you were going to say 25%, but the 75% figure is not very convincing, because everybody has to give. One of the ways you can give is to say for really, really old cars, which can have all gone by age, not by defect, we're going to go to 75% reimbursement, not 100% reimbursement. That's still a problem, you think? Everybody needed 100% reimbursement? Your Honor, yes, respectfully, it's a 25% reimbursement, and the class number has to pay 75% of the cost of the repainting. For some, for some. So according to their numbers, approximately 10,000- Reasonable settlement, 100% for everybody? That would make the settlement better, but ultimately- Not enough for you? If you have a class that is limited in scope to people who made repairs with no time limit, okay, no time limit, and no mileage limit, and to people who want to make repairs in the future to their cars, and they get 100% reimbursement out of pocket, that's a reasonable settlement. Oh, absolutely not, Your Honor. That would be a great settlement, but that being said- No loss of diminution in value. Oh, diminution in value is not necessary at all for a settlement to be fair, reasonable, and adequate. All that matters is that the class members would be receiving benefit that reflects the value of their claims and provide them with compensation. If you had, as you said, a class definition that carved out those who didn't make repayments, and they all received 100% of what they were asking for, that's within the purview of the court to- This is my last question. If it gave them 75% across the board, would that be reasonable? Settlements are always, as you mentioned, the product of hard-fought negotiations, but ultimately, the only people that can make two parties settle are those two parties with the court's approval. Unfortunately, the objector is not in a position to force anybody to negotiate a better deal or to include things that we think may or may not be better. It's not our burden to do that. It's their burden to show that the settlement that they did provide is fair, reasonable, and adequate. Just because they think it's the best deal that Mercedes is going to give them doesn't make the deal fair. It just makes it the best deal. If you had a billion-dollar case and the defendant said, I won't settle with you for anything more than a dollar, if you have any winning that case at all, cases go to trial all the time. It doesn't have to settle. The court cannot salvage an unfair settlement just because they think it's the best deal that those class members can get, even if it's not a fair deal in the first place, and even if it extinguishes the rights of the after-class members. I just want to clarify. Did you say that ammunition and value is not necessary to a fair settlement? In other words, you can cut out the former owners who didn't have the car repainted, didn't lodge an objection with Mercedes, or don't have a record of it. You can cut all those people out. They get nothing, and it still could be a fair settlement, fair and adequate? Absolutely, Your Honor. There is no requirement that any class action have any particular type of relief, but there is, or at least there should be a requirement that every class member within the class definition has suffered an Article III injury and is eligible to receive a benefit under the settlement. I'm sorry, counsel. If they had said here, which in effect they did say, we're not going to give. They were eligible to come to the negotiating table, and we had lawyers representing them, supposedly, but they're not entitled to one dime. We give them nothing. It doesn't matter what they file. If they're a former owner whose only claim is demunition and not if they're included in the class definition, absolutely not. Well, of course they are. I mean, that's part of the reason we're here. Yeah, then that would be. I thought you said demunition and value is not necessary for a fair settlement. It's not necessary for a fair settlement, but some sort of compensation is required. All right. How would you compensate a former owner who didn't get his car repainted, repaired, and doesn't still have it? How do you compensate? There's a ton of different ways that it could be done. Well, just give me one. Give me an ounce. Look at Epifax, for example. For those class members who were not eligible to receive free credit monitoring because they already had credit monitoring, those class members were eligible for $125 cash payment to compensate them for that data breach. So cash. Cash. Cash is there. I don't understand when you say demunition and value is not necessary for a fair settlement. You don't have to consider that, but you've got to give the people something. Well, if you give the people something, you're considered. Any sort of consideration in exchange for the release of their claims. It could be a benefit of the bargain at the point of purchase. I understand. I understand your position. I just thought it was something other than what you meant. Okay. Thank you. Very much, Mr. Cohen. You've saved your time for rebuttal. Okay. Mr. Garrison, I understand you've got seven minutes and Mr. Yoshino has eight minutes. Yes, Your Honor. Lou Garrison, Henry Garrison Davis in Birmingham for the Appalachians, the opinion plaintiffs. The way we look at this, Your Honor, the trial court has already heard every argument that they've made. They've made a lot of them. They've had a lot of opportunities to make arguments and objections. Can I ask you a quick question? I assume that you disagree with the 80% figure that we were banning about there with your adversary. Do you concede that there is some fraction of plaintiffs that are ineligible, frozen out, so to speak? If so, what do you think that number is? Well, Judge Newsom, all I can tell you is that we've seen no evidence in the record that there's anybody out there that's ineligible. In other words, there were certainly people that had an opportunity, even the people that presented the car to get repairs way back that's in the past repair category. They had an opportunity to participate in this settlement. If I'm purely speculating- Counsel, let me stop. Yes, sir. Counsel, let me stop you there. I don't think you mean that rather than go off on arguments assuming that you did mean it. You don't mean to tell us that there's no former owner in the class who had a car that was damaged by the paint problem, didn't get it fixed, and then traded it or sold it or whatnot, had an insurance claim on it, who's not going to get a dime under this settlement. Do you? That's not what you mean. No, Judge Carnes, I mean, all I'm telling you is I haven't seen any evidence of that. How can you have 160,000 of these cars that were sold starting in 14 years before the period closed out, and you think there's not anybody who didn't have this seen? No, sir. I'm not saying that didn't happen. I'm just saying I haven't seen any evidence of it, and your honor, even if it did- Well, I mean, you at least have the declarations of three of the objectors who are ineligible, right? That's evidence. We don't know that they suffered any damage. All we know is that they sold their car. No one claims that diminution of value is a certainty, but they have been frozen out because they either sold their car without having made any repairs or lost it as a total in an auto accident without having made any repairs. There are a number, whatever that number may be, there are a number of class members who fall into that category who can't get any benefits from the settlement agreement. You disagree with that? With respect to Acuna and Montgomery, okay? They dismissed their claims in the Ponzio case before we even had a settlement in the Penion case, and they have made no claim that they suffered any damages. I'm using those as examples, Mr. Garrison. You think that there are no class members in the 169,000 strong who can't get any benefits from the settlement agreement? You think nobody in that class is like our objectors who sold their car before the settlement was consummated without having made any repairs? I don't know. I haven't seen any evidence of it is all I'm telling you. There's nothing in the record that would substantiate- You don't have to see evidence of it. It doesn't mean that the settlement is bad for the class as a whole? That's a different question. Our question is not about whether the settlement is bad as a class as a whole. It's a much more narrow factual question. Are there any class members who are frozen out without being able to recover? You say you don't know. I don't know. I haven't seen it. So can I ask you maybe an even dumber question than I asked earlier about opt-outs? Whose burden is it? You say, I just don't know. We don't have the facts. Whose burden is it to demonstrate this number to the district court? Is it yours to show the fairness of the settlement or theirs to show the unfairness of the settlement, so to speak? Well, Your Honor, the district court looks at the class. They looked at all the evidence. They look at CP and guide files and objections, and they look at the relief to see if it's fair, reasonable, or adequate for the class as a whole. So this- I'm asking just kind of a blocking and tackling question. And truly, it might be like beneath your pay grade as a class action lawyer. I just don't know. But so if there is a settlement that freezes out some not insubstantial number of people, renders them mathematically, definitionally ineligible, whose burden is it to show the district court what that number is? Is it yours to defend the settlement or theirs to attack the settlement? There must be an answer to that question. I just don't know what it is. If the burden is on plaintiffs, it's on us to prove to the court that it's fair, reasonable, and adequate, which is what we did and what the court looked at all of these same issues. The trial court looked at it. But yes, sir, I'm not running from that. That's our burden to prove that the settlement's fair, reasonable, and adequate. This is a good settlement. You know, I wish I got everything I wanted in the settlement. I've been practicing law 40 years and it hadn't happened yet. But maybe it will. Maybe the next time- I understand that, counsel. But you understand our concern. If the burden is on you, which it is, fair, reasonable, and adequate, and we don't know whether it was fair, reasonable, and adequate, you're in trouble. And how can we know if it was fair, reasonable, and adequate unless we know how many people were thrown under the bus or under the settlement table, as it may be, in this case? I'm talking about the diminution in value. How do you ever know how many people are thrown under the bus, if any? All we know is that the people who have standing, these objectors, none of them were thrown under the bus that you all have raised and that we objected to. So- Well, I'm not sure about that. And I was going to say this to Ash later when we got through the big issues, but Frederick Parker, you're familiar with him, right? Which one, your honor? Frederick Parker. Parker, yep, looking at him. He says not a class member. All right, and the reason he's not a class member is what? His VIN number did not match a class vehicle. All right, but of course, the VIN, this isn't a class of VIN numbers. This is a class of former owners who had cars modeled that were affected by. And here's, and I want to tell you, I'm potentially bothered by this and I want to ask you some pointed questions. And the first one is, you filed in the district court in response to the objections a statement supported by an exhibit indicating that Mr. Parker's VIN number didn't indicate that he was an owner of a car. And the reason it didn't is the VIN number didn't match any car, right? Let me just tell you, that is right. That's what you argued. And you attached as proof of that, a declaration of a CAR FACTS vehicle history report where you put in the VIN and it comes back and tells you what model car that was and make car and all that kind of thing. Here's the thing that kind of catches your eye. On the CAR FACTS vehicle history report from Mr. Parker that you included with your declaration as an exhibit, it has the VIN entered as invalid. Please check or try again. Then it has the word or below that, or. But there's nothing on your brief shot or your declaration that shows what comes after the or. But if you put in that VIN number this past week, what you get is what you included in your declaration, but under the or, it says that VIN is invalid. However, it's close to the VIN listed below. Click the correct VIN to continue. And it has a linked VIN where one-sixth is the five, one-fifth is the sixth, which they say is the correct VIN number. The ninth of 17 numbers, somebody got off one digit. And you click on that and it comes up with a Mercedes VIN, SLK class. And if you run that through the decoder VIN of the National Highway Transportation Administration, you come up with a model more specific of Mercedes. Now, I know your declaration, when I say you, I'm talking about you and your co-counsel, whoever did it, is his VIN number is not associated with a class V. It's very carefully written. But what you didn't say, and I don't know if you personally knew it, but the quote correct VIN number, which is what CARFAX labels it, does come up with a subject V. Now, can you explain to us how y'all managed to omit everything after the or under the CARFAX report? Your Honor, me personally, I can't. I don't know. That's the first I've heard of anything like that. And was not unaware of that. I'm happy to check into it, but that is news to me personally. And I don't know what that means. I wish you would, but let me just tell you from my perspective, right, what I'm thinking. I'm presuming that is a subject vehicle, because it'd be a heck of a coincidence when one out of 17 numbers was off one, and the one that's off made it a Mercedes during the period that we're talking about in the model. So I don't think you can say none of the objectors, or just two of the objectors, were in the diminution in value class. But here's my bigger worry. Who is representing the diminution in value in people? Your class representatives weren't, were they? Well, let me tell you what happened, which is typical of what happens in any class action, is we filed a claim. We wanted to get diminution of value. Mercedes would not go along with it. We could keep charging like the Light Brigade and try to see if we could get a class certified for diminished value. We would not have succeeded. We had an opportunity to have a very good settlement for the class as a whole that provided significant benefits. So we thought it prudent, and as an interim class counsel, to do that. So we could have kept going. I understand. But there is no class for diminished value, and people could have opted out had they thought that they were getting the short end of the stick on that. Well, that's always true. You could have the most egregious class action ever seen, which would be something in this country. But you could have that, and your response would be, everybody can opt out if they wanted to. That, to me, doesn't persuade me very much. But let me ask you this. When you say we got a fair one for the class as a whole, that's not really accurate, because the class as a whole included some diminution in value people. It had to. Probably a large number of them, or at least a not insignificant number of them. And they're part of the class as a whole, because it was crafted to include them. You could have cut them out of the class and just said, we're not going to fool with you. Your Honor. Was that considered? We did not see a way that we could get a diminution in value class certified. We thought that was very problematic. Well, what's the difference between, in terms of, if I'm a diminution in value plaintiff, and only fit the class because of that, what's the difference between not getting one certified and leaving me part of a certified class for which I don't get a dime? Well, it's not true that they wouldn't receive anything. Had they presented their car to get to get the paint fixed, they would have an opportunity. You're quibbling with the definition of diminution in value. What I'm saying, diminution in value plaintiff, is that's the only claim they've got. They didn't present it to get painted. They sold it, traded it, insurance claimed it, or whatever. And by insurance claim, I mean after a wreck. And they got a diminution in value as a result of the paint job. That's the only claim they've got. And it looks to me like they kind of got thrown under the bus. And, you know, you've got the experience. Is it just accepted in class action that you've got to eggs to fry a few omelets? I mean, is some people going to lose their interest? No, sir, your honor. We don't look at that a few heads are going to roll so we can get a settlement for the benefit of the whole. There are a lot of settlements out there, and we've cited them in our briefs, that courts have said are fair and reasonable and adequate that did not have a diminution in value claim. Yeah, but there's settlements out there in which a what we're assuming to be a significant number of people are substantial, however you want to say it. Number of people get nothing, and they were fair, adequate and reasonable, even though they've been damaged. Apathetically, we're assuming they get nothing. And of course, so that's fine. Your honor, here's why, if you would let me answer this question. If you have a diminution in value claim, that means that your paint, at some point, had to bubble or crack and you did nothing about it. And you sold your vehicle and somebody paid you less than fair market value for that vehicle. So what my response to that would be, this is a latent defect. It didn't happen in every car. So there may be people that if the paint started peeling and cracking on my Mercedes, I would go to get somebody to take a look at it. And so that's important if you're a car owner. It's also important that we don't know if it didn't manifest whether or not anybody had a diminution in value claim. We don't know if these people thought enough of their cars. They get out there and get the things fixed. These are expensive cars. They would do that. So if they didn't and somebody took a little bit of a hit because they didn't get their car fixed or painted, is that possible? Yes, sir. That's possible, Judge Carnes. It is. But we haven't seen any evidence of that. We haven't seen it in the record. And that's the best way I can answer it. I wish I could have a perfect settlement that everybody was happy, but I've never had one in a class action. It just doesn't happen. So we did the best we could. The trial court agreed. He did everything. He looked at all of these arguments, the very ones that you're raising now, and found that this settlement was fair and reasonable and adequate. And for that reason, we asked that the court affirm. Thank you, Counselor. If you could look into the Carfax situation. I will. I'm not accusing you of anything. It's like seeing ellipses. If you want me to read something, put it in ellipses where it is and I'll read it. But just let us know. Judge Carnes, I appreciate you bringing that to my attention because I'm going to run that down today. Thank you, sir. Thank you. Let us know what you find out. I will. Okay. Good morning, Your Honors. May it please the court, Troy Yoshino, Winston and Strachan for Appalachian, Daimler AG, and Mercedes-Benz USA LLT. Before the district court, and again here today, objectors conceded that there is no case requiring compensation for diminution in value in order to approve a settlement in a case like this one. Objectors also conceded there is no case rejecting an extended warranty benefit as insufficient consideration for a class-wide release in a case like this one. Why not slice out those people who were completely ineligible for any relief from the class so that they could pursue, if they wanted to, a diminution of loss of value claim? Well, so we don't believe that those people are ineligible for any form of relief. There are some. As we cited in our briefing, the opportunity to make a claim in and of itself is a valuable benefit that supports consideration in a number of decisions. As Mr. Garrison pointed out, these people would have had an opportunity to make a claim. But they would have been denied under the terms of the settlement. You have to agree, don't you, that there are at least some people within the class who cannot, cannot get any benefits? Not just cannot, but could never. I don't know, Your Honor. I don't necessarily agree with that. A person who bought his car 14 years ago and sold it two years later, that person has, and didn't repair it, that person has no claim. If that person believed that they had a claim, they would be able to opt out of the settlement. That opt-out is not the question I'm asking you. Of course they can opt out. We all know that. But I'm trying to be up front about what I'm doing. I'm trying to pin you down. Sir. You have to admit that there are at least some, you may count them on a hand, maybe two hands, maybe more, maybe less. There are some class members who cannot, under any circumstances, get any relief under this settlement. Don't you have to admit that? I would agree. I think the sort of the challenge that I'm having is kind of the last portion of that. I would agree that there may well be people who had an issue with the paint, sold their car. Not may well be. There are. Oh, I'm not sure that there's record evidence of that. This gets to my question then. So, you know, if it is your burden to demonstrate fairness, do you think that you bore some responsibility to show the district court, we get it, there are 63 people in this class definition who are going to get nothing. They can't. But that's just not a big deal. Because there's so much looming uncertainty. They say 80%, which frankly I don't believe. But we also, I'm skeptical that there are one or two or five in 160,000. So whose burden is it to show the district court the number? I would say that that's the objector's burden. Okay, so it wasn't a stupid question then, you know, Mr. Garrison says, I think it's ours. And you say, you think it's theirs. So it's an open question, I guess. Because, and let me explain this a little bit. I think under rule 23E2C, our burden is to prove that the release to the class is fair, reasonable and adequate. Now, if the plaintiffs wish to challenge that notion that there are people within the class that it's not fair for, to the level that it means you cannot approve the settlement, you know, that there's more than one, two, five, or 63 in your example, then I do believe that that is objector's burden. So is this, does it operate, now I'm really about to get stupid, but like, does it operate like McDonnell Douglas? Where like, you've got a prima facie, you've got to make like a prima facie showing that this is fair, reasonable and they've got to come forward with some more specific evidence. I would, I would say that it's something similar to that, your honor. Yes. Yeah. I mean, I don't know. I'm not aware of a case law analogy to that, but yes, I would say it's something similar to that. I think the reason the benefit here is proper, and this has been glossed over perhaps a little bit in the argument, but is because the claim in the case was that the Mars Red Paint has a propensity to prematurely fail. Now we disagree with that claim. And in fact, we disagree that there's any defect in the paint at all, but those matters were hotly contested. And now that is the matter that is being compromised, right? So the primary benefit offered in this case, it covers both past and future repairs. It aligns with the claim made in the case by guarding against the premature failure of paint. We submit that it does not need to do more to be fair and reasonable because the claim is not, and it could not have realistically been that my clients guaranteed perfect paint that would last forever. So that's why the case law recognizes that benefits like the ones offered here are appropriate for settling both current and class-wide basis. These cases include Amin versus Mercedes-Benz USA, which is a recent matter involving Objector's Counsel. In truth, the appeal exists because Objector's Counsel had the Ponzio case, which is a competing class action, and they're disappointed that they were not able to recover attorney's fees there. But this disappointment doesn't mean that there was a reverse auction or any improper collusion. My clients did not pit the plaintiff's groups against each other. Instead, we were approached by the penile plaintiffs who still had many nationwide class claims to turn in a litigation. I should also note that the objectors did not challenge the notice or the claims process in the case. Therefore, the opportunity to file in the settlement, if one wished to do so, was also clear. Now, Ponzio objectors suggested that the repair in and of itself was a relatively high-value repair, that it could have cost up to $11,000 to repair or repaint an entire car. In response to this settlement, we received only 10 opt-outs from the class settlement. None of them have threatened individual litigation. We submit that the response to the settlement verifies the fact that it is a fair and reasonable settlement, that there was no abuse of discretion, and that the judgment should be affirmed. But you don't know how many of the people who didn't opt out because they were covered, not because they were covered. How many of the people who were covered and eligible for some relief wouldn't have opted out even if they got none? I mean, here's the problem I'm having with this. I joined Judge Jordan. Within the past month, I've got a little postcard inviting me to join the class action or opt out, take my pick, and sign it right here. And I'll have to submit proof that I got a credit card receipt back that indicated all six digits or six or more digits of my credit card number, whatever. I just guffawed about it a little bit and threw it away. That doesn't mean that I didn't suffer some loss, but it means that there's a great deal to be said for inertia, or as Holmes referred to at one time, the concession to the brevity of life. People don't really want to opt out and go start an individual suit against a giant automobile company with all its lawyers. That's not really a practical answer in my view to a question of was it fair not to give them some avenue of relief? A question mark. Well, with respect, Your Honor, I think a couple of things there. So first of all, I think Rule 23 and due process require notice and an opportunity for you to be aware of your options. If in a particular class action, you decide not to write, that's what Rule 23 and the due process clause require. And that is what was given in the settlement. I don't think it's correct to assume that there were a bunch of people out there with very substantial injuries, whether you call it diminution of value or something else, because to go back to the big picture, right, there is a lawsuit where we firmly believe there is no defect, where the plaintiffs and the objectors obviously believe that there were. There were claims about premature failure of the paint. This is the compromise that was reached, and the reaction to the settlement by the class members has been very favorable. With no questions about the notice of that. But then that takes us back to Judge Jordan's question. Why not just carve these people out? Well, to get no relief, just say that class doesn't include them. That would be no worse off at all. I don't believe that's necessary, though, because everybody in the case was making a claim about the propensity of the paint to prematurely fail, right? So that's the litigation that we wanted to resolve, and we feel that we reached an appropriate compromise on a class-wide basis to resolve that. The problem, yeah, you understand, and I'm not going to say it any different way. This is about the seventh way we've said it. The problem is you made the class action settlement on the backs of the diminution-in-value-only class members. They lost any hope of recovery in this class action with the settlement. Well, again, Your Honor, I don't believe so, because I believe that they had the opportunity to, for example, develop evidence, go and get a repair, if they still had the vehicle, or... No, no. I'm talking about the ones who didn't repair it, just grand and bear it as a concession to the shortness of life, and they're concerned about having to file an individual lawsuit against the great big automobile company. But then along comes the class action, and y'all, and I'm not saying that you did it with any improper motives. You don't want your client to be sued. So y'all negotiated a deal where all those people have no chance of recovery in this class action, and as a practical matter, are not going to sue your client. That's just... Maybe that's just the way the world works in class action. Well, yeah, I do think that... I agree with the bottom line there, Your Honor. But I do believe that by providing a benefit that guarded against the propensity of the paint to prematurely fail, that we provide fair, reasonable, and adequate consideration. It's true that we cannot account for all circumstances in determining what is a defect. We need to go back and remember that this also is a compromise of even the issue of whether or not there's a defect in the paint at all that is compensable. One final question. On page 13, footnote 2 of the objector's brief, they contend that 35,000-odd of the class members are ineligible due to age and mileage restrictions of the sliding scale in the agreements. They cite... They have a record cite for that, which I haven't looked at, but is that wrong? I believe it's wrong, Your Honor, yes. To my recollection, and as I stand here, I don't have the record cite either, but I believe it's to an expert opinion that they submitted. But what that figure does not account for is the fact that many, perhaps even all of the 35,000 received the benefit of the extended warranty because the extended warranty ran out to 15 years and 150,000 miles. It allowed claims for past repair reimbursement. It also expanded the substantive scope of the warranty by covering forms of paint damage unless they were truly unrelated. I know. That assumes... I read that footnote to suggest that 35,000 of the cars were over 15 years old or had gone over the mileage limits. No, Your Honor. Well, first of all, I believe it's their expert's opinion, but just as a matter of logic, I mean, you can see that at the time the settlement was reached, right, almost all of the class vehicles were within the age limitation. And there is no evidence that... Because the paint started... The paint was used starting in what year? I think it was model year 2004, if I remember correctly. Okay. So, well, let me not get too technical, but there's a small amount that's out, right? Well, there's a small amount that is out today. That is correct. But... If you had a 2004 car purchased, which had more than 150,000 miles in 2020, that car is out. That would be correct in terms of the size of the jail. There's a possibility that some cars, no matter how slight the number, are out of any possible reimbursement. No, I'm sorry. For future repair, right? Correct. Correct. For future repairs. If they've done no repairs earlier, they're out for future stuff. That is correct, Your Honor. I mean, I would also submit, by the way, that even if there are a small number of people within the class that are not eligible, I mean, as Judge Newsom's question kind of got to, I think the real question is whether or not the settlement as a whole is fair and reasonable, and whether the release offered to the class addresses the claim, right? And here, we submit that it does because the claim was about premature paint failure. So if you have paint failure at 20 years, we would submit that's not premature, and that's not indicative of a defect. All right. Thank you very much. Thank you. Thank you, Your Honor. I want to talk about a couple of things. The first is I hate to do it, but I want to read just a tiny bit from our brief to be 100 percent clear on the 80 percent number and where it came from and why we believe that that is true, and the record demonstrates that. The second thing that I want to talk about is what Your Honor just discussed regarding the footnote on page 13 of our brief with the 35,000 ineligible class members due to the age and mileage restrictions. By the way, before you get into that, you described the 80 percent figure in two different ways in your brief. You say the settlement agreed to by the pignon parties failed to provide any relief for the majority of class members. That's one thing, but then you also use 80 percent are ineligible. Those are two different things, at least in my understanding, but you can go ahead and explain what you meant. Yes. So to be clear, when we say are ineligible, we meant like at the time of us writing that statement, which is objectively true because the window to file a claim for a past repair has closed and it was closed before the settlement had achieved final approval. So when we made our objections before final approval, the window had closed. They were not eligible to file claims any longer for past repair, nor were they eligible to file claims for future repainting. The thing that I just think I still don't understand, even if that's true, even if it was technically true at the time you filed your objection, is that I don't know how that can be laid or lain at the feet of the settling parties unless the settlement by its own design excluded these people sort of ab initio. Sure. The only person who knows the answer to that question would be Mercedes, the defendant in this case, because they obviously know how many people have come to them and had their car repainted or asked to have their car repainted and have rejected it. You know, we're not aware of that, and the PENOM plaintiffs haven't provided that either, but they must have thought that it was pretty favorable to them if they were to agree to that type of relief without, you know, turn to our brief really quickly and then get to Your Honor's other point regarding the other footnote. In this case, we say that the PENOM plaintiffs are all eligible for the highest levels of relief. We say PENOM plaintiffs estimate that 168,817 class members will be bound by the settlement. Of these, 99,702 are former owners or former lessees who are obviously ineligible for future repainting benefits because they no longer possess the subject vehicles. But let me stop you. They're not ineligible for past reimbursements. They are ineligible to file a claim for past reimbursements now, and at the time we wrote our brief. That's not ineligibility. They've missed the deadline. I'm giving you my perspective and only mine. Absolutely, Your Honor. I think you completely overshot with the ineligibility assertion in your brief. I think the way you described it on the top of page 13 is accurate, that they can't get relief now. I get that. But ineligibility in legal terms means something really, really different. It means that from the beginning, you could not have possibly been in the game. Sure, Your Honor. And again, you know, we maintain that FOUT and Equifax and Johnson and all this line of cases demonstrate that it's the proponent of the settlement's burden to put forth evidence showing that it's fair, reasonable, and adequate. We brought – you helped me just since we're talking about burden, and I promise we're not going to time you out. Yeah, no, I appreciate that. Thank you. So to my either brilliant or stupid question about sort of burden shifting, how does it work? Like on the ground, how does it work? When you've got some debate about a number of people plausibly frozen out definitionally, is it their burden to show that number of people and then to say to the district court, don't worry about it, it's not a big deal? Or is it their burden to come forward and just say, hey, look, globally, this is fair to the, you know, sort of the lion's share of people. And then you've got to come forward and say, like, wait, wait, wait, there are X number of people who are frozen out. So with respect to just is the settlement as a whole fair, reasonable, and adequate, the burden is on the proponents of the settlement. The case law makes that clear. But part of that burden that they have to say, oh, and by the way, you need to know there are some people who just can't recover under this. Maybe not necessarily to make their prima facie case, but the objectors in this case brought forth multiple individuals and scenarios that are not hypothetical that actually happened that illustrated for the court, the types of people who would be ineligible. So what was yes. So what does that evidence show? I think Judge Jordan speaking for himself, but incidentally speaking for me, I'm skeptical of the 80% number. So what does the evidence that the objectors brought forward actually show as to the fill in the blank number of people who are frozen out? So we can break it down into two categories. I think that we may have beaten a death, you know, beaten this issue to death with regard to the past relief, but to tie it in with what Judge Jordan was asking with respect to the future relief, there's 69,000 cars at most 69,000 class members are eligible for that. But according to the declaration that was provided by pin on plaintiff's expert, Lee Bowren, he said that, all right, you know, on average, like this is how many miles a year, you know, this number of people drive, like this is how many model, you know, how many cars are in each model year. When we put all those numbers together and average it out over the class, we found that 35,397 of the class members were ineligible for any of the future benefits, even though they still possess the car due to those age and mileage restrictions. We had an expert testify to that. So, you know, those people were eligible theoretically for any past repairs. Theoretically, they were eligible for past repairs. But now that. No. Yeah. If you if you had one of those people who owned one of those 35,000, I think that's the figure 35,000 cars. We do. OK. If you had one of those people who at year 10 of ownership, there's not a lessee. Right. But an owner at year 10 experienced a bubbling and peeling problem, took it to Mercedes, got it fixed. It cost five thousand dollars. You submit the claim. And you're getting the money back. That person is not out in terms of relief. Right. So we have two class members that kind of fall into the two sides of the hypothetical that you provide. The first is Samuel Salgado. He he bought his vehicle in 2014. He still owned it at the time he filed his objection. I believe he does still own it now. His vehicle is 180,000 miles. He never paid to have it repainted. Despite despite manifestation, he would get zero percent from this settlement. You know, case closed. End of story. He did not pay to repaint it. He still owns it. He he's in that 35,000 group that can't. Another is Robert. You're using that 35,000 group again. You just went from one to 35,000. Yeah. So he's a member of that 35,000. That doesn't mean that the 35,000 are like Mr. Salgado, that those chose not to repaint the hypothetical I gave you with someone who is out for future repairs, but actually chose to repaint during the period that provides him or her relief. So I believe it seems hard for me for either side on this record to really give any number with any confidence. And maybe it's a set of where the burden lies because I'm not confident in the 80 percent figure. I'm also not confident in a zero percent figure. But what do you do with that gulf in between? Absolutely, your honor. I do want to point out Robert Mole, who did pay twice to have his car repainted partially, both times at independent shops in twenty eighteen and twenty twenty one. He owns a twenty fourteen SLK that he bought in twenty seventeen. And I'm not a hundred percent sure what his current eligibility is for future repainting, but he is one of the types of people who did pay previously to repaint would be entitled to ten percent reimbursement under this settlement because he didn't bring his car to Mercedes. He did it at a place of his choice, even though he didn't know that he had to bring it to Mercedes because they made up the ten percent number after the fact. But once his car is above one hundred fifty thousand miles or above 15 years old, he's in the in the category zero, the zero percent relief. Well, what do you do with what do you do with. The possibility, probably maybe probability that the paint effect didn't show up for some of these cars. I mean, this is not a claim that every single Mercedes Benz vehicle painted with Mars nine, whatever paint was going to bubble within five years. Absolutely. And what do you do? What do you do with the unknown percentage of the class members who never suffered and never will suffer harm? I want to be careful when we talk about suffering harm, because that, in my mind, raises the issue had their bubble. So absolutely. The way that I would say is you should look to the third amended complaint, the second, first, all of the complaints in this case, which bring these claims pursuant to a damages theory based on benefit of the bargain at the time of purchase. Ponzio plaintiffs did that in the District of New Jersey. Tenon plaintiffs did that in the northern district of Georgia here in Atlanta. And that case and those claims basically say that at the time that they purchased the vehicle, irrespective of manifestation at all, they did not receive the benefit of their bargain. I know, but that claim didn't succeed and was not the basis for the settlement. The plaintiffs, whatever else you may think of the settlement, settled for less than the claim that they asserted. That doesn't tell me anything about the numbers. So think about, for example, like Comcast versus Barron from the Supreme Court a few years ago. The theory of damages has to match with the theory of the case. Here, when we're talking about less relief, and you think about it in terms of a spectrum, sure, the repainting or the partial repainting is less than diminution in value or benefit of the bargains or other cash types of reimbursement or payment. But that doesn't mean that that's necessarily the tradeoff. So for example, a lesser settlement to a diminution in value settlement would provide less diminution in value. A lesser reimbursement for repainting would provide less reimbursement. Here, it's apples to oranges between diminution and for repainting. Like that does not fit with their theory of the case. And that claim still existed until they chose to extinguish it in agreeing to the settlement, but it existed in the past. They say one of the reasons is that it would be hard, near impossible to certify a class for diminution of value, because there's no way you could have a damages formula applied across the board to that subclass. Well, the... the private buyer told me that he was going to pay me $1,000 less because of this thing he had heard about, Mars 950 paint. Then you have others who traded in, others who have it totaled in an accident and then have the insurance company pay. Did you pay less on that car because of the Mars 950 red paint problem? Or did you play, you know, Kelly Book value for that car when it got totaled? Sure, Your Honor. But this court in Cariola versus GM in 2016 affirmed class certification of a vehicle class under a FIDUPTA claim where they had a benefit of the bargain at the point of purchase, theory of damages, and... But what was the alleged effect in that case? The Cariola versus GM... If you had... if you have a claim that the starter on a... for a car is defective and will fail within three years, that's a very different claim than the paint on this car may bubble at some point. That's a very different claim. And I think that that's important, you know, factually to recognize. And I think it's also important factually to recognize some of the cases that both Pinon and the defendants have discussed with respect to these defects. Almost every case within the briefing has to do with things like, you know, an engine failure, transmission failure, an air conditioning failure, things that would otherwise render the car unusable. And I do submit to this court that as a Floridian and former Atlantean, no air conditioning does render the car unusable. But those cases where the car is unusable, you have to go out and fix the car. The paint defect, on the other hand, does not render the car unusable. So, for example, if you were a lessee of the car and it would cost, you know, thousands of dollars to repaint your leased vehicle, you just would keep using it because you're not going to pay to repaint your leased car in the same way you're not going to repay to re-roof your apartment or renovate the kitchen of your apartment. So, if your engine blows on your leased car, like you have to repair that because the car won't drive. If your air conditioning doesn't work, you know, you're going to have to repair it at least by the summertime. But for a repaint, you don't actually have to repair it to continue to use the vehicle. Can I ask you just one more question? I know we've kept you way over your time, everybody. But I mean, there are five lawyers at counsel table who I assume you all do this for a living. If we go and look, is there law out there that will explain to me this burden issue that I've become so fixated on about, you know, when there is a class that doesn't provide, or not that doesn't provide relief to, but that definitively, definitionally, categorically doesn't provide relief to some subset of people, whose burden is it to show that number? I mean, I'll just confess that my impression had been, maybe still is, that the settling parties have some kind of burden to show globally that this settlement is sort of rough justice, sort of pretty good, fair, reasonable, adequate, and that then it might be your burden to show something more specific about the number being frozen out. You don't have to tell me as you're standing there because you just might not know, but like if we go out searching for that, is there an answer to that question? Directly, I would say no, but I think that you can amalgamate the case law that already exists to provide a solid foundation for an answer, which would be that in Equifax and in Johnson, you know, this court has said that the district court must act as a fiduciary, fiduciary for all of the class members to ensure that the settlement is fair. In FOUT and Johnson and Equifax and Holmes, it all said the burden is on the proponents of the reasonable and adequate, and we've, you know, raised our objection. We've shown real, true, legitimate existing people, just as real as you or I, Your Honor, that are, as a matter of fact, unable to get any reimbursement or future repayment. It really should end right, you know, the inquiry should end right there at this court. You know, this isn't a fact-finding court, but the district court, you know, as a fiduciary should hear those people's objections and say, like, this is a problem and find out if, you know, it's a big problem or a small problem, you know, a problem that can be overcome or not. And the court failed to do that. The court failed to act as a fiduciary for the class. It failed to act as a fiduciary for Mr. or for Mrs. Acuna and for Mr. Parker and for the entire class. And that in itself, you know, bears upon the fact that this needs to be reversed. All right. Thank you very much. Thank you all very much. We'll take the case under advisement and we're done for today.